MARSHALL ET AL. *v.* TRIBUNE-STAR PUBLISHING CO., INC.

[No. 667A17. Filed April 30, 1968. Rehearing denied June 16, 1968. Transfer denied with opinion June 17, 1969.]

*Tony Foster,* of counsel, and *Bingham, Summers, Welsh & Spilman,* of Indianapolis, for appellants.

*Edward J. Ohleyer,* of counsel, *Ice, Miller, Donadio & Ryan,* of Indianapolis, for appellees.

PRIME, J.—The appellants here brought an action to the Industrial Board of Indiana for adjustment of claim for compensation by reason of the death of plaintiff's decedent.

The principal facts were stipulated and may be summarized as follows:

Raymond J. Marshall, the decedent, was employed by the Tribune-Star Publishing Co., Inc., of Terre Haute, Indiana. He was employed as "head carrier." His job was to go to the newspaper plant early each morning to see if the paper boys, or carriers, reported in to receive their papers. It was part of his duty to call the boys if they were not there and see that they got on the job. In case a carrier could not report

that day, he reported the reason for absence to his superior. According to the evidence, Marshall did not obtain substitute carriers. The duties mentioned pertained to the carriers who came to the plant to pick up their papers.

The other duty performed by Marshall consisted of delivering other papers to various parts of the city to be picked up by carriers. These he would deposit on certain corners or other designated locations within a certain district or part of the city. It was part of Marshall's job to see that these carriers received their papers and the evidence was that he called the boys on occasion.

This job held by the decedent was a part-time job. He would report about 3 A.M. each morning. He held another job with a milk company where he worked after 7 A.M.

On May 21, 1961, the decedent reported on the job as usual. He picked up his bundles and put them in his car to be delivered to the drop locations.

It was stipulated that Marshall owned his own car, a 1959 Ford, and that his salary was $14.00 per week plus a car allowance of $5.00 per week, a total of $19.00.

On the morning in question, Marshall loaded his car but before leaving he asked one of the carriers, who was at the plant, to go with him on his route. The carrier was a boy named David Schultz, age 16, who testified that his papers were not yet ready at the plant and that Mr. Marshall asked him to go along and that he would bring him back to the plant. With the bundles in the back of the car they started to deliver them on the route.

At 5 o'clock A.M. at the corner of Third and Voorhees Streets a collision occurred with another automobile. The decedent was killed in the accident. The carrier boy was injured but recovered.

The issues were formed by appellant's Form 10 Application for benefits. No special answer was filed. The matter was

heard before a Single Member of the Industrial Board and reviewed by the Full Board.

By stipulation the issues to be determined by the Industrial Board were:

1. Whether plaintiff-decedent's accident arose out of and in the course of his employment with the appellee.

2. The average weekly wage of plaintiff's decedent.

The Single Member's Award was for the appellant and upon appellee's application for review the Full Board, without additional evidence, heard arguments and found that the accident did not arise out of and in the course of his employment and entered an award against the appellants.

The average weekly wage of $19.00 was found. Thus, the issue to be resolved is the question of whether or not the accident occurred in the course of decedent's employment.

The findings and award of the Hearing Member were:

". . . That on May 12, 1961, the claimants' decedent, Raymond J. Marshall, received injuries resulting in his death, which injuries and death were caused by an accident arising out of and in the course of his employment with the defendant.

That at the time of his death the decedent's average weekly wage was $19.00, which amount included an allowance of $5.00 per week for expenses and which allowance was part of the wage agreement between the decedent and the defendant-employer . . .

It is further found that the defendant did not pay the statutory burial expense and that no compensation has been paid by the defendant to the decedent's dependents, and said judgment hereinbefore obtained against such third party, which is unpaid and unsatisfied, does not relieve the defendant from the payment of the statutory burial expenses and compensation to which the decedent's dependents are entitled to under the Workmen's Compensation Law of the State of Indiana.

It is further found that the decedent left surviving him as his sole and only statutory dependents, Dorothy E. Marshall, his widow, who is unmarried, and a minor daughter, Diane Marshall, who remained a statutory dependent until

November 26, 1965, at which time she married, and from said date she was no longer a statutory dependent and is not entitled to share in any compensation subsequent to November 26, 1965.

The Hearing Member now finds for the plaintiffs and against the defendant on plaintiff's Form 10 Application filed on May 6, 1963.

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED, AND ADJUDGED by the Industrial Board of Indiana that the plaintiffs have and recover of and from the defendant compensation at the rate of $18.00 per week, beginning May 12, 1961, for a period of 400 weeks and in no event to exceed the sum of $15,000, exclusive of burial expenses; said compensation to be brought up to date, paid in cash and in a lump sum . . ."

Application for review of the award was filed by the defendant and upon review the Full Board entered an award as follows:

". . . The Full Industrial Board of Indiana having heard the arguments of counsel and having reviewed all the evidence in said cause and being duly advised in the premises therein, now finds:

That on May 12, 1961, the claimants' decedent, Raymond J. Marshall, was in the employ of the defendant at an average weekly wage of $19.00, which amount included an allowance of $5.00 per week for expenses and which allowance was part of the wage agreement between the decedent and the defendant-employer.

That on May 12, 1961, the claimants' decedent, Raymond J. Marshall, received injuries resulting in his death, which injuries and death were not caused by an accident arising out of and in the course of his employment with the defendant.

The Full Industrial Board of Indiana now finds for the defendant and against the plaintiffs on plaintiff's Form 10 Application filed on May 6, 1963.

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that

plaintiffs shall take nothing by their Form 10 Application filed on May 6, 1963.

Dated this 9 day of June, 1967."

The task of determining the meaning of "out of" and "in the course of" employment is certainly not new and has been defined in many decisions of this court.

We cite with approval the case of *Whaley* v. *Steuben County Rural Electric Membership Corporation* (1966), 139 Ind. App. 520, 221 N. E. 2d 435, 9 Ind. Dec. 407. Another leading case is *Tom Joyce 7-Up Company* v. *Layman* (1942), 122 Ind. App. 369, 44 N. E. 2d 998, which stated that:

". . . under this section of the statute an injury to be compensable must both arise out of and be in the course of the employment. Neither alone is enough."

"This court has correctly held that an accident occurs in the course of the employment, within the meaning of the compensation act, where it takes place within the period of the employment, at a place where the employee may reasonably be and while he is fulfilling the duties of his employment, or is engaged in doing something incidental to it." *Jeffries* v. *Pitman-Moore Co.* (1925), 83 Ind. App. 159, 147 N. E. 919.

"The words 'arising out of' refer to the origin or cause of the accident and are descriptions of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident occurs." *City of Chicago* v. *Industrial Commission* (1941), 376 Ill. 207, 210, 33 N. E. 2d 428, 429.

The appellee urges that after the last bundle of newspapers was dropped by the decedent, his duties ended. A witness for the company testified that when he was notified of the accident he immediately went to the last location where the papers were to have been left and that the bundle was there. This does not demonstrate or prove, however, that the decedent had completed his rounds. He could have deposited the papers on the corner and then made other drops. The testimony of the carrier was that there were bundles of papers remaining in the car at the time of the accident. Further, the decedent was

traveling on a direct route to the newspaper plant with the carrier in the car who had to be returned to the building to pick up his papers. While the decedent had no obligation to return the boy to the plant, since he was simply a passenger at the invitation of the driver, it seems beyond question that he was returning to the plant during the hours of his employment to-wit: 5 o'clock A.M. This was two hours before his duties were to begin on the other job at 7 o'clock A.M.

Moreover, the cases hold that where an employer requires the employee to use his own car and compensates him for such use, this makes the car an integral part of the employment and the use of the car, even going to and from work, is held to arise out of and be in the course of his employment. *Pittsburg Testing Laboratories* v. *Kiel* (1960), 130 Ind. App. 598, 167 N. E. 2d 604; *Whaley* v. *Steuben Co. REMC, supra.*

The case of *Fleeger* v. *Nicholson Brothers* (1934), 100 Ind. App. 104, 192 N. E. 842 held that where a grocery delivery man delivered groceries to his own home 3 miles distant from his employers' store and was killed on the return journey, his injury arose out of and in the course of his employment. Decedent had eaten his lunch at home, but his wife had ordered the groceries and was entitled to the same delivery as other customers. The eminent Justice Cardozo, speaking for the New York Court of Appeals, stated the rule as follows:

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." *Marks' Defendents* v. *Gray, et al.* (1929), 251 N. Y. 90, 93, 167 N. E. 181.

When we apply the above test to the undisputed evidence before us there can be but one conclusion: it was the employment of Marshall that sent him forth at 5 o'clock in the morning to deliver the papers of his employer.

The inference that the Board drew that Marshall had completed his job and was not in the course of his employment, simply because a bundle was found at the last corner where he normally left it, is not reasonable. This inference totally disregards testimony and uncontroverted evidence that the decedent was on duty, which the Hearing Member found to be conclusive.

We are not unmindful that the Industrial Board is the sole fact-finding body and that on appeal this court cannot weigh the evidence. Our jurisdiction is limited to the examination of the evidence and inferences therefrom to ascertain whether the findings rest upon a substantial factual finding.

We point out that the Full Board is bound by the same rule when reviewing an award of a Hearing Member. The Full Board may review the evidence of the original hearing, without hearing new or original evidence, at the discretion of the Board. This case was considered only upon the evidence submitted before the single Hearing Member. Thus, the credibility of witnesses should not be weighed.

Rule 18 Industrial Board Procedure.

"18. The facts upon review by the Full Board will be determined upon the evidence introduced in the original hearing, without hearing new or additional evidence, at the discretion of the Industrial Board." *N. Y. Central R. R. Co.* v. *Green* (1938), 105 Ind. App. 488, 15 N. E. 2d 748.

The case of *U. S. Steel Corporation* v. *Brown* (1967), 142 Ind. App. 18, 231 N. E. 2d 839, 12 Ind. Dec. 263, a recent opinion by Judge Smith, speaking for this court, is determinative of the issue of whether or not an accident arose out of and in the course of the employment. This case points out the present law as defined by our Supreme Court:

"An injury may be said to arise out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be

performed and the resulting injury." *E. I. DuPont, etc.* v. *Lilly* (1948), 226 Ind. 267, 271, 79 N. E. 2d 387.

The rule is again reiterated in *U. S. Steel Corp.* v. *Dykes,* (1958), 238 Ind. 599, 154 N. E. 2d 111.

"The words 'arising out of and in the course of employment' as used in the Workmen's Compensation Statute, should be given a broad and liberal construction in order that the humane purpose of their enactment may be realized. Workmen's Compensation Act, Burns' Ann. St. § 40-1202; *Indiana Toll Road Commission* v. *Bartusch* (1962), 135 Ind. App. 123, 184 N. E. 2d 34, 36." *U. S. Steel Corporation* v. *Brown, supra.*

"Regardless of the test we employ, a policy decision must be reached: should the appellee's injury, under the surrounding circumstances, be regarded as sufficiently connected with the employment to be a proper charge against the enterprise?" *U. S. Steel Corporation* v. *Brown, supra.*

It is our opinion that the facts in the case at bar lead inescapably to the conclusion that the death of appellants' decedent was in the course of his employment and that the award of the Industrial Board was contrary to law. The decision of the Board is reversed and remanded with instructions to grant an award consistent with this opinion.

Judgment reversed.

Bierly and Cooper, JJ., concur.

Pfaff and Smith, JJ., concur in result.

Faulconer, J., dissents with opinion in which Carson, C. J., concurs.

Cook, P. J., not participating.

### DISSENTING OPINION

FAULCONER, J.—I cannot concur in a reversal of this award under the facts of this case and the law concerning reviews by this court of awards by the Industrial Board.

As stated in *Moore* v. *L. O. Gates Chevrolet, Inc.* (1967), 140 Ind. App. 672, 225 N. E. 2d 854, 855, 856, 10 Ind. Dec. 373 (transfer denied), the award of the Board cannot be set aside unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the appellant was entitled to an award under our Workman's Compensation Act.

Whether the accident arose out of and in the course of decedent's employment with appellee was an issue within the province and the duty of the Board to decide. The Board's conclusion, if sustained by competent evidence of probative value or legitimate inferences therefrom, will not be disturbed by this court on appeal. *Moore* v. *L. O. Gates Chevrolet, Inc., supra.*

The evidence in the present case concerning the vital issue of whether appellant's decedent was within the scope of his employment when the accident occurred is conflicting. Although we may draw different conclusions or inferences from the evidence than did the Board, our duty is not to substitute our judgment for that of the Board.

In my opinion we cannot state that reasonable men could only conclude, from the evidence in this case and the permissible inferences therefrom, that appellant's decedent was acting within the scope of his employment and that the accident arose out of said employment.

Therefore the award should be affirmed.

Carson, C. J., concurs.

NOTE.—Reported in 236 N. E. 2d 508. Transfer denied with opinion 243 N. E. 2d 378.